UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

The Huntington National Bank,
a national banking association,

      Plaintiff,

vs

                                Case No. 2:19-cv-10511-MOB-RSW
                                Hon. Marianne O. Battani
                                Mag. Judge R. Steven Whalen

Elliott Investment Co. Inc.,
a Michigan corporation,

      Defendant.

---

## ACCEPTANCE OF RECEIVERSHIP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

The Huntington National Bank,
a national banking association,

     Plaintiff,

vs                             Case No. 2:19-cv-10511-MOB-RSW
                                   Hon. Marianne O. Battani
                                   Mag. Judge R. Steven Whalen

Elliott Investment Co. Inc.,
a Michigan corporation,

     Defendant.

---

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR APPOINTMENT OF RECEIVER

    A.     The Huntington National Bank ("Huntington") filed a motion for

the appointment of a receiver (Docket No.  ) over the Mortgaged Property

defined below, which asserted the breach by Elliott Investment Co. Inc.

("Elliott") of its obligations under an amended and restated promissory note

(the "Note") and forbearance extension agreement, each executed on October

1, 2018, but effective as of September 10, 2018 (the "Forbearance

Agreement").

    B.     Repayment of the Note is secured by a Mortgage executed by

Elliott (the "Mortgage") in favor of Huntington dated April 25, 2007,

encumbering real property commonly known as 6600 Mt. Elliott Avenue,

Detroit, Michigan (the "Mortgaged Property"), which was recorded by the

Wayne County Register of Deeds on May 4, 2007 in Liber 46269, Page 147,

and by a lien upon all of the equipment and personal property related to the

Mortgaged Property (the "Collateral").

      C.      Under its terms, Elliott agreed to repay the Note on or before

January 10, 2019, but failed to do so.

      D.      Under the terms of the Forbearance Agreement, Elliott agreed to

the appointment of a receiver for the Mortgaged Property and the Collateral,

with the power to market and sell same, upon the occurrence of an Event of

Default (as defined in the Forbearance Agreement).

      The Court has reviewed the pleadings, is otherwise fully informed in the

premises, and believes that good cause exists for granting the relief sought,

and that the Receivership Order should be modified to read as provided

herein.

**IT IS ORDERED:**

      1.      **Appointment of Receiver.** M. Shapiro Management Company

LLC, by its authorized agent, Mark Kassab, whose address is 31550

Northwestern Highway, Suite 220, Farmington Hills, Michigan 48334 (the

"Receiver"), is appointed as receiver for the Mortgaged Property, the

2

Collateral, and all payments, leases, rents, books and records, deposits, bank accounts and other personal property, tangible or intangible, that is used or usable or related thereto (collectively, the "Receivership Property").

2.    **Possession and Control of Receivership Property.**  The Receiver is authorized to immediately take possession and control of the Receivership Property, and to manage, recommend and consummate the sale of same (subject to the approval of the Court), as the Receiver deems appropriate, and to otherwise exercise the powers and duties set forth in this Order.  The Receiver is authorized to remove any officer, owner, manager, director, trustee, beneficiary, representative or agent of Elliott from control and/or management of the affairs of the Receivership Property.

3.    **Actions in Furtherance of Possession and Control.**  The Receiver is authorized to take any reasonable actions which the Receiver shall deem necessary or appropriate to take possession of, to exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Receivership Property.

4.    **Surrender of Receivership Property.**  Elliott, its employees, agents, officers, managers and directors are directed to surrender all of the following relating to the Receivership Property to the Receiver, to the extent that they are in their possession, custody and control:

a.    All keys and access codes necessary for the Receiver to obtain possession of and to manage the Receivership Property, as provided in this Order.

b.    All documents and records useful in maintenance relating to the Mortgaged Property and the Collateral, including but not limited to, as applicable, building permits, plumbing and HVAC drawings, soil borings reports, surveys, environmental reports, architectural or design diagrams and building specifications.

c.    All work in process, materials, supplies, "punch lists" and other pending work orders with respect to construction at the Mortgaged Property, if any.

d.    All construction contracts and subcontracts for construction on the Mortgaged Property, if any.

e.    All bids for contractor work, if any.

f.    All agreements with brokers or other commission agreements pertaining to sales or leases of the Mortgaged Property, or any portion thereof.

g.    All leases and other executory contracts, including all amendments, pertaining to the Mortgaged Property or other Receivership Property, or any portion thereof.

h.    All documents, books, records, computer files and records concerning the finances, rents, operation and management of the Receivership Property.

i.    A list of all accounts receivable and accounts payable, and all details regarding same.

j.    All documents identifying pending litigation and insurance claims.

k.    All utility agreements.

l.     Such other records pertaining to the Receivership Property as may be reasonably requested by the Receiver.

m.    All cash and deposits owned by or in the possession of the any of the Defendants pertaining to the Mortgaged Property and the Collateral.

n.     All documentation pertaining to contracts entered into by any of the Defendants relating to their business operations, the Mortgaged Property, and the Collateral.

5.    **Powers and Duties of Receiver.**  The Receiver shall be vested

with and shall discharge the following authority, powers and duties:

a.     The maintenance, securing, management, operation, leasing (upon terms acceptable to Huntington) and preservation of the Receivership Property.

b.     The assumption of control over the Receivership Property, including all deposits, security deposits, and other cash collateral relating thereto.

c.     The maintenance of one or more separate accounts, in the Receiver's own name, as Receiver for the Mortgaged Property and the Collateral, from which the Receiver shall disburse all authorized payments, as provided in this Order.

d.     The preparation and maintenance of books, records and financial reports of the Receivership Property, including but not limited to operating and income statements, balance sheets, and all other statements prepared for the Receivership Property, and provide copies of them to the parties to this action, through their counsel.

e.     The purchase of such insurance as the Receiver deems appropriate for the preservation and protection of the Receivership Property, naming the Receiver and Huntington

as additional insureds, or as necessary to protect their interests.

f.    The receipt and endorsement of checks pertaining to the Receivership Property, either in the name of the Receiver or in the name of Elliott, as applicable.

g.    The payment of all real estate and personal property taxes, and any other taxes or assessments against the Receivership Property, during the period of the receivership.

h.    Taking such action, including pursuing insurance claims, and/or the filing of one or more lawsuits as the Receiver shall deem necessary and appropriate, in the Receiver's discretion, for the collection of any outstanding accounts receivable or other monies owed to Elliott.

i.    The investigation of any fraudulent or otherwise improper transfers or conveyances of the assets of Elliott as the Receiver shall deem necessary and appropriate, and, if necessary, the prosecution of any action to set such transaction(s) aside.

j.    Prevent the withdrawal or misapplication of funds.

k.    Issue such subpoenas as deemed necessary to allow the Receiver to fulfill the duties set forth in this Order.

Notwithstanding anything to the contrary contained in this Order, the

Receiver shall not have the authority to file a petition for relief under the

Bankruptcy Code for Elliott.

6.    **Access to Books and Records.**  The Receiver shall permit

Huntington and its agents and counsel access to the Receivership Property at

6

all reasonable times, to inspect the Receivership Property and the books and records of Elliott.

7.     **Employment of Third Parties.**  The Receiver is authorized, but not required to, all without recourse against the Receiver, to employ such attorneys, accountants, appraisers, agents and others, as the Receiver may from time to time deem appropriate.

8.     **Borrowing of Funds.**  Subject to the approval of the Court, without affecting the rights of the parties relating to the underlying Note, the Receiver is authorized, but not required, to borrow funds from Huntington for approved purposes, if necessary, upon terms and conditions agreeable to Huntington and the Receiver.  Upon receipt of the approval of the Court, the Receiver shall be authorized to execute all promissory notes, loan agreements, Receiver's certificates, and amendments thereto, as shall be necessary to accomplish same.

9.     **Exercise of Powers Available Under Applicable Law.**  Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available under federal law or the laws of the State of Michigan, which may be incidental to the powers described in this Order, and to act on behalf of and in the name of Elliott in such manner as the Receiver shall deem appropriate.

10.    **Further Instructions.** The Receiver shall have the right to apply to the Court for further instructions and authorization during the pendency of this action.

11.    **Protective Advances.** Subject to the order of the Court, all advances to the Receiver made by Huntington for the benefit of the Receivership Property, together with any other costs and expenses incurred by the Receiver pursuant to this Order, shall be deemed to be protective advances pursuant to the Note, and shall be secured by the Mortgage, and shall have priority over all claims and liens of all others claiming an interest in any of the Receivership Property.

12.    **No Transfer of Title.** Nothing contained in this Order shall be construed to transfer title to any of the Receivership Property to the Receiver.

13.    **Sale of the Mortgaged Property.** The Receiver is authorized to, on behalf and in the name of Elliott, expeditiously and diligently sell the Mortgaged Property and the Collateral, with the approval of the Court, consistent with the provisions of 28 U.S.C. §2001(a), under the following conditions:

      a.    The sale shall be for cash, unless otherwise authorized by the Court, for amounts subject to the approval of the Court.

      b.    The sale, approved by the Court, shall be free and clear of all mortgage interests, security interests and other liens, as

applicable, which may be transferred to the net proceeds of sales. No person or entity shall have any redemption rights with respect to any sale effectuated by the Receiver, and each sale shall be final upon entry of an Order of the Court confirming same.

14. **Execution of Sale Related Documents.** In connection with the sale of any of the Receivership Property approved by the Court, the Receiver is authorized, in the name of Elliott, to:

a. Execute a deed of conveyance and bill of sale.

b. Attend and consummate the closing at the office of any title company acceptable to the Receiver and Huntington (the "Title Company").

c. Approve, with Huntington, the closing statement with respect to the sale of the Mortgaged Property and the Collateral, including all costs of closing, sales commissions, and other adjustments to the purchase price(s), as applicable.

d. Obtain all mortgage and construction lien waivers, quit claim deeds, and such other documents as are reasonably requested by the Title Company or the Receiver to effectuate the sale of the Mortgaged Property and the Collateral, and to allow the issuance of the appropriate owner's policies of title insurance to the purchasers.

15. **Disbursement of Net Sale Proceeds.** The "net proceeds of sale" shall be deemed to be the gross sale price of the Mortgaged Property and the Collateral, less closing costs, sales commissions, any outstanding or projected expenses of the receivership estate, and other adjustments approved by the

Court. The Receiver shall promptly pay into the Court any surplus proceeds, and shall be permitted to otherwise disburse the net proceeds of sale, consistent with the respective lien priorities, but only upon the agreement of the parties or the further Order of the Court. "Surplus proceeds" shall be deemed to be the "net proceeds of the sale", less the amounts necessary to satisfy the claim of Huntington and any other valid secured claim of record.

16. **Lien Priorities.** The rights and priorities of Huntington and any other parties with respect to the Receivership Property shall be determined in accordance with applicable federal or Michigan law, and in conjunction with the provisions of this Order.

17. **No Waiver of Claims and Defenses.** Nothing contained in this Order shall enlarge or restrict the claims and defenses of Huntington or other parties claiming an interest, with respect to the Receivership Property.

18. **Compensation of Receiver and Agents.** The Receiver and all persons employed by and/or whose services are utilized by the Receiver, shall be compensated at their normal rates, with invoices to be issued and copies furnished to the parties to this action, through their respective counsel, on a monthly basis. The Receiver's general office administration, accounting and overhead shall not be charged against the income generated by the Receivership Property. The Receiver and the Receiver's counsel may receive

10

payment on a monthly basis, without further Court order, provided no objections are filed with the Receiver or the Receiver's counsel, as the case may be, within seven (7) days after such invoices are mailed or electronically transmitted to the parties to this action, through their respective counsel. In the event any objections are timely filed, the Receiver or any other party may file a motion with the Court to determine the propriety of the fees sought or of any objections. The Receiver shall be reimbursed for any reasonable out of pocket expenses incurred during the period of the receivership concerning the obligations and duties set forth in this Order. The compensation paid to the Receiver and any professionals employed by the Receiver shall be paid first from the income generated from the Receivership Property and, next, by Huntington, but only to the extent that the income from the Receivership Property is insufficient to pay the Receiver and the compensation of the professionals employed by the Receiver.

19.     **Receiver's Reports.** The Receiver shall furnish to the Court and to all parties, through their respective counsel, monthly reports and statements accounting for all receipts and disbursements. The reports served upon counsel shall be submitted to the Court upon agreement of the parties or if a dispute arises for its review *in camera*, and shall not be filed with the Clerk of the Court.

20.    **Receiver's Bond.** The Receiver shall post a surety bond in an amount of not less than $10,000.00. The cost of the bond shall be an expense of the receivership, for which the Receiver shall be reimbursed in accordance with the terms of this Order.

21.    **Lawsuits against Receiver.** No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an Order of the Court permitting the suit or action. Notwithstanding the foregoing, nothing in this Order shall serve to stay or otherwise enjoin any pending action to enforce lien rights, including but not limited to the foreclosure of mortgages encumbering property owned by Elliott.

22.    **Pre-Receivership Liabilities.** Huntington, the Receiver and the Receiver's agents shall not be liable for any claim, obligation, liability, action, cause of action, cost or expense of Elliott, its business operations, or the Receivership Property, arising out of or relating to events or circumstances occurring prior to the entry of this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties for the benefit or on the behalf of Elliott, and any liability to which it is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Property and operation of Elliott's business (collectively all of

12

the foregoing is referred to as "Pre-Receivership Liabilities"). Huntington, the Receiver, and the Receiver's agents shall not be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of Huntington (but not otherwise), the Receiver may fund Pre-Receivership Liabilities from funds collected from the operation of the Receivership Property.

23. **Stay of Actions.** Except by leave of this Court and except with respect to the right of Huntington to foreclose the Mortgage, or to otherwise take any enforcement action against the Receivership Property and the Collateral during the pendency of the receivership, any and all persons, creditors and entities are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of Elliott, the Receiver, the Receivership Property, the Collateral, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

        a.    Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

        b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Elliott that relates in any way to the Receivership Property, or attempting to foreclose, forfeit, alter or terminate the

interests of Elliott in the Receivership Property, whether such acts are part of a judicial proceeding or otherwise;

c.  Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Property; and,

d.  Doing any act or thing to interfere with the Receiver taking control, possession or management of the Receivership Property, or to in any way interfere with the Receiver or the duties of the Receiver or his agents; or to interfere with the exclusive jurisdiction of this Court over the Receivership Property.

This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

24.  **No Personal Liability of Receiver.**  The Receiver and the Receiver's employees, agents and attorneys shall have no personal liability in connection with any obligations, liens or amounts owed to Elliott resulting from the performance of their duties pursuant to this Order, it being understood that the rights of each such creditor shall be determined in accordance with applicable law.

25.  **Breaches by Receiver.**  The Receiver and the Receiver's employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties

14

under this Order, except for those arising from intentional tortious acts, breaches of fiduciary duties, acts committed in bad faith, gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Order or any other Order of the Court.

26. **Interference with Receiver's Duties.** The parties to this action, those in active participation or concert with them who receive notice of this Order, and those having claims against the Receivership Property who receive notice of this Order, are enjoined from interfering with the Receiver's actions in furtherance of performing the duties and carrying out the responsibilities outlined in this Order.

27. **Receiver as Fiduciary.** The Receiver shall faithfully discharge all of the duties outlined in this Order, and shall obey all other Orders of the Court. The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property, and shall exercise the office accordingly.

28. **Commercial Reasonableness.** The Receiver's actions at all times shall be commercially reasonable, and the Receiver is subject to the personal jurisdiction of the Court.

29. **Acceptance of Appointment as Receiver.** The Receiver's duty to act in that capacity is subject to the written acceptance and approval of the

15

terms of this Order. Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

30. **Duration of Receivership.** This receivership shall continue until the earlier of: (i) the sale of all Receivership Property; or, (ii) the further Order of the Court.

31. **Discharge of Bond.** The termination of the receivership will not discharge the Receiver or the Receiver's bond.

32. **Resignation of Receiver.** In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical. Upon such event, the Receiver's duties shall terminate thirty (30) days after filing the notice with the Court, followed by an Order of the Court terminating the receivership.

33. **Removal of Receiver.** The Receiver may be removed either: (i) thirty (30) days after filing of a written demand for removal signed by Huntington's counsel, and filed with the Court; or, (ii) in the Court's equitable discretion, upon a motion for cause. If the Receiver is removed, a successor receiver can be appointed by an order stipulated upon by the parties to this action. If the parties to this action are unable to agree upon a successor receiver, one shall be appointed by the Court, after a motion is filed by any party to this action requesting the appointment of same.

16

34. **Final Accounting.** Within thirty (30) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting for approval by the Court, with copies to be furnished to the parties to this action.

35. **Court Approval of Final Accounting.** Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged, and the Receiver's bond canceled.

36. **Tax Returns.** The Receiver and the professionals employed by the Receiver shall not be responsible or required to, and shall not, prepare or file tax returns in connection with the Receivership Property or Elliott, or otherwise wind down the business affairs of the Receivership Property or of Elliott.

37. **Lien Enforcement and Foreclosure Rights.** Nothing in this Order shall be construed to affect the rights of parties who have been granted mortgages or other liens upon property owned by Elliott, including the right to commence or continue foreclosure proceedings, either judicially or by advertisement. No further order of the Court is necessary for a mortgagee or lien claimant to commence a foreclosure, either judicially or by advertisement.

38. **Amendment of Order.** This Order may be amended for cause, either upon the stipulation of the Receiver and the parties, or for cause, after a

17

motion and hearing. No amendment to this Order shall affect the rights of persons or entities who are able to demonstrate that they relied upon the pre-existing terms of this Order to their detriment.

39. **No Prejudice.** This Order shall not prejudice the rights of any party to any claim, right or defense which they may have to Huntington's claims set forth in the Complaint.

40. **Environmental Compliance.** The Court finds that, Huntington, in seeking the appointment of the Receiver, is engaged in a "workout activity," as that term is defined in M.C.L. §324.20101a(3), and its actions in seeking the appointment of a Receiver are intended to protect the value and marketability of the Mortgaged Property, which is its collateral for repayment of the indebtedness described above. The Court further finds that Huntington's actions taken in seeking the appointment of the Receiver do not constitute participation in management, as that term is defined in 42 U.S.C. §9601(a)(20).

41. **Utilities.** Any utility provider receiving notice of this Order shall establish and provide utility service to the Mortgaged Property, in the name of the Receiver.

42. **No Assumption of Contracts.** Notwithstanding anything to the contrary contained in this Order, the Receiver shall not be required to

18

perform under, and may reject and otherwise terminate, any contract, document, lease, purchase order, statement of work or any other instrument entered into or accepted by Elliott prior to the date of entry of this Order. As such, the Receiver is not automatically bound by, nor deemed to assume, the contractual obligations of Elliott prior to the appointment of the Receiver, and unless the Receiver has affirmatively elected to assume any such contract, document, lease, purchase order, statement of work or any other instrument entered into or accepted by Elliott prior to the date of entry of this Order, the Receiver shall not be bound by or deemed to have assumed same, nor shall the Receiver or the receivership estate have any liability or obligation under or with respect to same, and the decision to affirmatively elect to assume any such contract, document, lease, purchase order, statement of work or any other instrument, is within the Receiver's sole discretion.

Date: April 5, 2019

s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge

19

Approved as to form:

Plunkett Cooney

By: /s/Douglas C. Bernstein
Douglas C. Bernstein (P33833)
Attorneys for Plaintiff

Grand & Grand PLLC

By: /s/Joel E. Grand
Joel E. Grand (P51261)
Attorneys for Elliott

20

## ACCEPTANCE OF RECEIVERSHIP

The duties of the Receiver, as set forth in the foregoing Order, are

accepted and agreed to.

M. Shapiro Management Company LLC

By: _____

Printed name: _MALK KASHAB_

Its: _Authorized Agent_

**Drafted by and when recorded, return to:**
Douglas C. Bernstein
Plunkett Cooney
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304

21

# EXHIBIT 1
## LEGAL DESCRIPTION

Land in the City of Detroit, County of Wayne, State of Michigan described as:

Parcel 1:

All that part of Lots 28 and 29 of the plat and survey by commissioners in partition in the Estate of John Strong, deceased of the North ½ of Section 28 and the Northeast fractional Section 29, Town 1 South, Range 12 East, according to the plat thereof as recorded in Liber 243 of Deeds, Page 517, Wayne County Records, described as follows: Beginning at the Southwesterly corner of Lot 29 of Strong Estate, which point is the intersection of the Easterly line of Mt. Elliott Avenue with the East and West ¼ line of said fractional Section 28, which line is also the Northerly line of the Michigan Central Railroad Right-of-Way; thence along the Easterly line of Mt. Elliott Avenue, North 28 degrees 14 minutes West 500.00 feet, more or less, to the Southerly line of Lot 30 of said Strong Estate; thence North 88 degrees 38 minutes 12 seconds East 681.55 feet, more or less, along the Southerly line of said Lot 30 to a point on the Westerly line of the Michigan Central Railroad spur Right-of-Way; thence Southerly along the Westerly line of the Michigan Central Railroad spur Right-of-Way on a curve to the left, a distance of 515.58 feet, radius of said curve being 603.69 feet, long chord of said curve bears South 28 degrees 48 minutes 34 seconds East 500.06 feet to a point in the Southerly line of Lot 28 of said subdivision of the Strong Estate, which line is also the East and West ¼ line of said fractional Section 28; thence along the South line of Lots 28 and 29, South 88 degrees 27 minutes West 686.05 feet to the point of beginning.

Parcel 2:

Lot 30 of the plat and survey of the North ½ of Section 28
and the Northeast fractional Section 29, Town 1 South,
Range 12 East, according to the plat thereof as recorded in
Liber 243 of Deeds, Page 517, Wayne County Records,
EXCEPT a strip of land 30 feet in width off the rear of the
Northeasterly portion of and adjoining the Northeasterly
boundary of said Lot 30 and extending from Strong Avenue
across said Lot 30 a distance of 440 feet.

Tax Item No. 014140, Ward 15

Open.01491.21211.21754895-1